[Civ. No. 2635. First Appellate District, Division Two.—October 2, 1919.]

BEN E. TORMEY, Appellant, v. BELINDA P. McINTOSH et al., Respondents.

[1] ATTACHMENTS—BOND FOR RELEASE OF—SUBSEQUENT BANKRUPTCY OF DEFENDANT.—Where a bond is executed for the release of an attachment, the subsequent bankruptcy of the attachment defendant will not relieve the bondsmen from their liability.

[2] ID.—PURPOSE OF BOND—BY WHOM GIVEN—RECITALS IN—EVIDENCE —ESTOPPEL.—The recitals of a bond given pursuant to the provisions of section 540 of the Code of Civil Procedure are conclusive as between the parties thereto; and where such a bond purports to be authorized and signed by the attachment defendant in compliance with the statute and recites that "whereas the said defendant . . . is desirous of giving the undertaking mentioned in the writ [of attachment], now, therefore, the undersigned," etc., in an action thereon, the bondsmen may not by their testimony show that the

---

1. Discharge of principal in bankruptcy as releasing surety on attachment bond, notes, 15 Ann. Cas. 956; 14 L. R. A. (N. S.) 507; 28 L. R. A. (N. S.) 234.

bond was not given by the defendant in the attachment suit for his benefit, but was given by them to protect their personal interest in the property attached.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

Milton Newmark and Clarence A. Shuey for Appellant.

J. Oscar Goldstein for Respondents.

LANGDON, P. J.—This is an appeal from a judgment for the defendants in an action brought against them as sureties upon a bond given pursuant to the provisions of section 540 of the Code of Civil Procedure. In 1912, plaintiff began an action in the superior court for Butte County against one Frank N. Miller, seeking to recover one thousand two hundred dollars for merchandise sold and delivered to him. At the time of the commencement of the suit, a writ of attachment was issued and placed in the hands of the sheriff for execution. The sheriff levied upon a stock of merchandise in a store in Chico, which was the property of the defendant in that action. The defendants in the present action executed a bond meeting the requirements of section 540 of the Code of Civil Procedure, which is the bond sued upon in the present action. Upon receipt of the bond, the sheriff released the property which he had seized. Subsequently, Miller was adjudged a bankrupt and in the course of the administration of his property in the bankruptcy court plaintiff received a dividend of something over three hundred dollars, which amount was credited on Miller's account. Thereafter, the defendant in the attachment suit filed a supplemental answer setting up his discharge in bankruptcy. Plaintiff asked for a judgment against the defendant for the balance due, in order that he might be enabled to enforce his rights against the sureties on the bond. He asked that judgment be entered in his favor with a perpetual stay of execution against the property of Miller. The superior court gave judgment for the defendant, from which judgment an appeal was prosecuted, and said judgment reversed. The

superior court then rendered its judgment in favor of the plaintiff in the sum of $875.30 with a perpetual stay of execution against the property of Miller. Demand was made upon the sureties, who refused to pay, and the present action was brought against them, in which action judgment was rendered in their favor.

[1] The appellant argues at some length and cites numerous cases in support of the proposition that the subsequent bankruptcy of the attachment defendant did not relieve the bondsmen from their liability. It is unnecessary for us to discuss this point here, because it is conceded by respondents in their brief that the subsequent bankruptcy of Miller would not in itself release the defendants in the present action, if there were no other valid defenses to the bond.

[2] There are several points made in the briefs under different subdivisions, but they are all included in the main question presented. The record presents a conflict in the evidence on certain matters, arising by reason of the fact that the defendant, Hazel Miller, testified in direct contradiction to some of the recitals of the bond she had executed. The findings of the trial court on such matters are in direct conflict with the recitals of the attachment bond given by the defendants. The inquiry must then be, whether under the facts of this case the defendants may contradict by their testimony the positive recitals of the bond, which recitals they represented to the plaintiff to be true, and upon the strength of which the plaintiff relinquished what was at the time a very valuable right.

At the time the bond was given, the defendant, McIntosh, was the mother-in-law of Miller, and the defendant, Hazel P. Miller, was his wife. It appears that Mrs. Miller had loaned her husband about two thousand five hundred dollars, which had been used by him in purchasing the store, and that he had promised to repay this amount to her. She testified that at the time the attachment was threatened she and her husband were having domestic troubles; that her husband had gone to San Francisco, and she did not know where he was; that when she received notice of the contemplated attachment, she was ill at her mother's home; that she and her mother signed the bond of their own motion, upon the advice of their attorney and without any request from Miller so to do; that said bond was signed for the purpose of protect-

ing the interest that she (Mrs. Miller) had in the store; that the property was attached, and later released by the sheriff after he received the bond, and that she was in the store when the sheriff released it from the attachment. Upon this testimony, as against the positive recitals of the bond, as found by the court, the defendants base their argument that the bond was not given by the defendant in the attachment suit for his benefit, but was given by persons having no right under the statute to give such a bond, and for the benefit of such persons alone. The trial court accepted this view and found in accordance therewith. The bond itself is signed not only by the sureties, but by Frank N. Miller himself. It recites that "whereas the said defendant, Frank N. Miller, is desirous of giving the undertaking mentioned in the writ, now, therefore, the undersigned," etc. There is in the record the testimony of Guy R. Kennedy, identifying the signature of Frank Miller upon the bond, and this witness also stated that he saw Miller in Chico between the time the writ was issued and the bond was given. Mrs. Miller herself admits that the signature upon the bond looks like the signature of her former husband. The decisions of this state are to the effect that the recitals of such a bond are conclusive as between the parties thereto. (*Pierce* v. *Whiting,* 63 Cal. 540; *Smith* v. *Fargo,* 57 Cal. 159; *Bailey* v. *Aetna Indemnity Co.,* 5 Cal. App. 744, [91 Pac. 416]; *McMillan* v. *Dana,* 18 Cal. 346.) The facts of this case are such as to call strongly for the application of the principle announced in the foregoing cases. Taking defendants' view of the evidence, we have a case where Mrs. Miller was seeking an advantage to herself—seeking to protect her interest in the property. She claims now that she had no right to protect this interest by furnishing an attachment bond of her own motion. Let us assume that she had not, and that the only right of this kind was in the defendant in the attachment suit, Frank Miller. If, then, this is assumed to be the law, we must also assume that such facts were known to her and her attorney. But she nevertheless caused a bond to be drawn by her attorney which purported to be authorized by Miller, and in form complied with the statutory bond which he might have furnished. She signed this bond; it was given to the sheriff. The record is silent as to who actually gave the bond to the sheriff, but we will assume that it was regularly

given to him by a person authorized to do so. The bond was signed by Frank Miller; the property was released under said bond. The plaintiff in the attachment suit relied upon the representations made in the bond. Mrs. Miller accepted the release of the property; she knew it had been released in reliance upon the bond. Later, when called upon to respond upon the bond, she attempted to contradict the very allegations upon which she secured the release of the attached property. We must conclude that though the facts be as found by the trial court, these defendants are nevertheless estopped by the recitals of the bond to prove such facts in contradiction of such recitals. The findings of the trial court upon which the judgment is based are findings which have no support except in this testimony on behalf of the defendants. The plaintiff objected to the introduction of such evidence and his objections were overruled. This ruling was error; the testimony should not have been admitted, and if it is ignored, there is no evidence in the record to sustain the findings upon which the judgment was based.

The case of *Thayer* v. *Braden,* 27 Cal. App. 435, [150 Pac. 653], relied upon by respondents, is not inconsistent with the views herein announced. The question involved here does not arise in that case.

As to the contention that the bond was given to prevent an attachment and not to release one, the case of *Preston* v. *Hood,* 64 Cal. 405, [1 Pac. 487], disposes of that contention.

The judgment is reversed.

Brittain, J., and Nourse, J., concurred.