(No. 6824. September 19, 1940.)

WALTER STEWART, Doing Business Under the Firm Name and Style of STEWART LUMBER AND COAL COMPANY, Respondent, v. A. B. SLATER, J. E. MANUEL, WAYNE FLACK and C. C. TARPNING, Appellants.

[105 Pac. (2d) 729.]

A. F. James, for Appellants.

630

Charles Scoggin and Fred M. Taylor, for Respondent.

AILSHIE, C. J.—On the 9th of October, 1938, respondents commenced an action against the Five Points Mining & Milling Co., Inc., and caused a writ of attachment to issue against the property of the company. Before the attachment was completed by the sheriff, the defendant company caused to be executed and delivered to the sheriff an undertaking as provided by sec. 6-504, I. C. A., to prevent the attachment, which undertaking was signed by the appellants herein. May 8, 1939, plaintiff recovered judgment against the Mining and Milling Company for the sum of $2,911.76. May 24, 1939, on petition of the Five Points Mining & Milling Co., an order was entered in the United States District Court for the District of Idaho, authorizing the company to submit a plan for reorganization, under section 77B of the Bankruptcy Act; and the court thereupon entered a restraining order enjoining

"all persons, firms, and corporations whomsoever . . . . from . . . . attaching, levying upon, enforcing liens upon or in

any manner whatsoever disturbing any portion of the assets, goods, money, property or premises belonging to or in the possession of the debtor, or from taking possession of, or in any way interfering with the same or any part thereof.''

Thereafter the company submitted its plan for reorganization and September 23, 1939, the court denied the petition for reorganization and adjudged the Mining and Milling Company bankrupt. Thereafter and on June 9, 1939, this action was commenced for recovery from the bondsmen the amount of the judgment previously entered against the Mining and Milling Company, and judgment was entered against the bondsmen (appellants) December 27, 1939, and this appeal is prosecuted therefrom.

No execution was ever issued and returned as provided for by sec. 6–530, I. C. A., and the only question presented on this appeal is whether issuance and return of an execution was essential to the maintenance of the action on the bond.

Our code provisions, on attachments and the procedure thereunder, are identical with the California provisions from which they were adopted by our territorial legislature in 1881 (1879–1885, Sess. Laws, secs. 318–340). The California courts have uniformly held the issuance and due return of an execution, *nulla bona,* is a necessary prerequisite to commencement of an action on a bond given to release property about to be attached. (*Passow & Sons v. United States F. & G. Co.,* 177 Cal. 31, 170 Pac. 1124; *O'Hair v. United States F. & G. Co.,* 9 Cal. App. (2d) 307, 49 Pac. (2d) 1129; *Hutchinson v. United States F. & G. Co.,* 58 Cal. App. 573, 209 Pac. 249; *Barrios & Co., Inc., v. Indemnity Ins. Co. of North America,* 101 Cal. App. 675, 282 Pac. 386; *Brownlee v. Riffenburg,* 95 Cal. 447, 30 Pac. 587.)

It has also been held by the California court that, under sec. 552 of their code (identical with our sec. 6–530), the statute of limitations begins to run against a bond given under either of their code sections (540, 554 and 555, Code Civ. Proc., corresponding with our secs. 6–504, 6–532 and 6–533), immediately *on the return* of the execution; and that the return *must* be made within a ''reasonable time.'' (*O'Hair v. United States F. & G. Co., supra,* and cases therein cited.)

■ Here the bond was taken by the sheriff under sec. 6–504 before he completed the attachment and evidently at the time he took possession of the property or was about to do so. He could not have done so after completing the attachment (*Federal R. Bank v. Smith,* 42 Ida. 224, 228, 244 Pac. 1102), and no question of that character arises here. Our attachment statutes (secs. 6–504, 6–532 and 6–533) provide for two kinds of undertaking to relieve the owner of property from having it tied up under attachment during litigation. The first method is by giving a bond to the sheriff (sec. 6–504) to prevent attachment or the completion of an attachment; and second, after an attachment has been made and returned, the court may make an order for release of the property attached upon the defendant executing and delivering an undertaking in such sum as the court requires (secs. 6–532, 6–533). These are provisional remedies (*Sherwood v. Porter,* 58 Ida. 523, 76 Pac. (2d) 928), and must be substantially complied with.

It is contended that the bond fixes the time and condition upon the happening of which the liability of the bondsmen becomes absolute. It provides:

"NOW THEREFORE, We the undersigned, residents and freeholders or householders within the said State of Idaho, in consideration of the premises and of the release from the said attachment of the property attached, do hereby jointly and severally undertake to the said Sheriff, R. T. Baldwin, in the sum of $3100.00, being an amount sufficient to satisfy plaintiff's demand, including costs, and promise to the effect that in the event said plaintiff shall recover judgment in the said action against the defendant, that such defendant and the undersigned will, on demand, pay to the plaintiff the amount of said judgment together with all costs, not exceeding in all the said sum of $3100.00."

■ It must be conceded that this bond, on its face, fixed the liability of the sureties to "pay to the plaintiff the amount of" *any judgment* he might "recover . . . . in the said action against the defendant." It is indisputable, however, that the bond was given and accepted under authority and in pursuance of sec. 6–504, which directed the sheriff to accept such a bond if tendered. It must be held to be a statutory

bond. (*Preston v. Hood,* 64 Cal. 405, 406, 1 Pac. 487; *McCutcheon v. Weston,* 65 Cal. 37, 2 Pac. 727; *Gardner v. Donnelly,* 86 Cal. 367, 372, 24 Pac. 1072; *Passow & Sons v. United States F. & G. Co.,* 177 Cal. 31, 170 Pac. 1124, 1126.

 In *Passow & Sons v. United States F. & G. Co., supra,* it was said:

"The effect of section 552 is to make the regular issuance and return of an execution unsatisfied in whole or in part a condition precedent to the maintenance of an action upon the undertaking."

(See, also, *Barrios & Co., Inc., v. Indemnity Ins. Co.,* 101 Cal. App. 675, 282 Pac. 386.) Indeed, our statute implies as much by providing that, "If the *execution be returned unsatisfied* in whole or in part, the *plaintiff may prosecute* any undertaking given pursuant to section 6–504 or section 6–533," (italics supplied); or he may proceed in the regular way "as in other cases upon the return of an execution," (I. C. A., sec. 6–530) the same as he could have done had no attachment ever issued and no undertaking been given.

It is urged, however, here that, after the entry of judgment in the attachment action, and before the commencement of this action on the bond, the defendant in the attachment suit was adjudged a bankrupt by the federal court, under the National Bankruptcy Act; and that by the bankruptcy order and decree, "all persons, firms, and corporations were restrained . . . . from interfering with, attaching, levying upon, enforcing liens upon or in any manner whatsoever disturbing any portion of the assets, goods, money, property or premises belonging to or in the possession of the debtor, or from taking possession of, or in any way interfering with the same or any part thereof."

 It is thought that the adjudication of the debtor's bankruptcy had the legal effect of relieving the judgment creditor from the subsequent performance of the useless (if not contemptuous) act of causing an execution to issue and be returned unsatisfied. (*Rosenthal v. Perkins,* 123 Cal. 240, 55 Pac. 804, 806; *Barrios & Co., Inc., v. Indemnity Ins. Co.,* 101 Cal. App. 675, 282 Pac. 386, 387; 3 Cal. Jur., sec. 96, p. 519; see, also, *Howe v. Union Ins. Co.,* 42 Cal. 528 (14 Pac. States Rep. 528), Fed. Cas. No. 6,776.) It is certainly

unnecessary and excusable where levy and execution of the writ is prohibited by another statute or decree of a court of competent jurisdiction.

It is urged by appellants, however, that respondent had sixteen days clear between the date of judgment and the date on which the Mining & Milling Co. filed its petition in bankruptcy; and having failed to take out an execution during that period, he is not now entitled to urge the contention that the bankruptcy of the judgment debtor relieved him of the duty of taking out execution. We do not think such a contention is sound. A judgment creditor may delay taking out execution against his debtor, as long as the statute (sec. 8–101, I. C. A.) permits him to claim the issuance of execution without being chargeable with laches or subject to estoppel.

The judgment is affirmed with costs to respondent.

Budge, Givens, Morgan and Holden, JJ., concur.